IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| Plaintiff | ) | C.A. No. 24-84 Erie |
| v. | ) | |
| | ) | **District Judge Susan Paradise Baxter** |
| **MICROTECH KNIVES, INC.,** | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**I.   INTRODUCTION**

**A.   Relevant Procedural History**

Plaintiff Jane Doe, a former employee of Defendant Microtech Knives, Inc., brings this action against Defendant alleging claims of sex/sexual orientation discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, et seq. In particular, Plaintiff alleges a total of six counts: two counts of hostile work environment based on sex/sexual orientation at Count I (Title VII) and Count IV (PHRA); two counts of constructive discharge/termination based on sex/sexual orientation at Count II (Title VII) and Count V (PHRA); and two counts of retaliation at Count III (Title VII) and Count VI (PHRA).

Defendant has filed a motion to dismiss Plaintiff's claims for failure to state claims upon which relief may be granted, and, alternatively, moves to dismiss Plaintiff's PLRA claims at Counts IV and VI for failure to exhaust administrative remedies. [ECF No. 19]. Plaintiff has filed a brief in opposition to Defendant's motion [ECF No. 22], and Defendant has filed a reply brief [ECF No. 23]. This matter is now ripe for consideration.

1

**B.     Relevant Factual History**[1]

Defendant hired Plaintiff, who identifies as lesbian and gender non-conforming, as a quality assurance ("QA") employee, in or around March 2021. (ECF No. 1, and ¶¶ 13-16). Plaintiff was Defendant's only openly LGBTQIA+ employee and the only female QA employee in Defendant's Lathes Department. (Id. at ¶¶ 11, 17).

Plaintiff alleges that "[i]n or around September/October 2021, Savannah LNU, Operator, a co-employee, approached Plaintiff and a group of employees, and stated that a male coworker was interested in Plaintiff, but the employee who approached Plaintiff stated that she told the coworker that he was not Plaintiff's type, or words to that effect. Plaintiff stated, 'I'm more into females.' The group of employees to whom Plaintiff made this statement, and came out, consisted of Ryan Nichols, Operator; Randy Hoag, Machinist; Dave Burke, Operator; and Savannah LNU. When Plaintiff came out, Mr. Hoag and Mr. Burke laughed." (Id. at ¶ 18).

Plaintiff alleges that, on one occasion, Randy Hoag ("Hoag") "discriminated against [her]" and "sabotaged [her] work" because she "used the right tags, but the wrong tags would be sent over with the parts that Plaintiff later determined contained [Hoag's] initials on them." (Id. at ¶ 19). At some unspecified time(s), Plaintiff reported her concerns about Hoag to "Ms. Bev George, Supervisor," "Mr, Brett Degoiler, Supervisor of Lathes," "Bridget LNU in the Human Resources ("HR") department," and "Tonya LNU in the HR department." (Id. at ¶¶ 21-24). Although Tonya LNU stated that she would speak to someone higher up, Plaintiff heard nothing further from her. (Id. at ¶ 24).

---

[1] The factual history set forth herein has been gleaned from the allegations of Plaintiff's complaint [ECF No. 1], which are accepted as true for purposes of considering Defendant's motion, to the extent such allegations are well-pleaded.

2

On or about November 10, 2023, Hoag "shoulder-checked and hurt Plaintiff in front of several male employees, on account of discrimination, and in retaliation for Plaintiff's complaints." (Id. at ¶ 26). On that same date, Plaintiff reported Hoag's conduct to Mr. Degoiler, commenting that "she didn't understand why everyone made everything hard for her, like they wanted her to quit, or words to that effect," to which Mr. Degoiler responded "'I could tell you, but you'd need a release,' or words to that effect." (Id. at ¶ 27). Plaintiff then terminated her employment on that date. (Id. at ¶ 28).

## II.   DISCUSSION

### A.   Hostile Work Environment

Plaintiff asserts claims of hostile work environment under both Title VII (Count I) and the PHRA (Count IV).[2] In order to state a claim of hostile work environment under Title VII, "a plaintiff must show (i) that [s]he suffered intentional discrimination because of h[er] [protected status]; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected h[er]; (iv) the discrimination would detrimentally affect a reasonable person of the same [protected status]; and (v) there is a basis for employer liability." Torres v. City of Philadelphia, 907 F.Supp.2d 681, 688 (E.D. Pa. 2012), citing Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007). The Third Circuit has since emphasized that the correct standard is "severe or pervasive," clarifying that "the distinction 'means that 'severity' and 'pervasiveness' are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is

---

[2] The PHRA is substantially identical to Title VII and utilizes the same analytical framework as Title VII; thus, "Pennsylvania courts ... generally interpret the PHRA in accord with its federal counterparts." Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996); Chmill v. City of Pittsburgh, 412 A.2d 860, 871 (Pa. 1980).

3

pervasive." Castleberry v. STI Group, 863 F.3d 259, 264 (3d Cir. 2017) (citation omitted).

In Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001), the Supreme Court established a framework for analyzing the "severe and pervasive" prong:

> [H]arassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

(internal citations and quotation marks omitted).

In short, a plaintiff must plead facts that show her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment[.]" Betz v. Temple Health Sys., 659 Fed. Appx. 137, 142 (3d Cir. 2016) (cleaned up). "Simple teasing, offhanded comments, and isolated incidents (unless extremely serious)" are not sufficient to sustain a hostile work environment claim. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Caver v. City of Trenton, 420 F.3d 243, 262-63 (3d Cir. 2005). Rather, the "conduct must be extreme to amount to a change in the terms and conditions of employment...." Id.

Here, Plaintiff's allegations fall well short of meeting the high threshold for stating a plausible hostile work environment claim. In essence, all she has pled are two isolated incidents that occurred two years apart from one another. The first occurred in September/October 2021, when Plaintiff "came out" by stating that she was "more into females" in the presence of a small group of male co-workers, two of whom, Hoag and "Mr. Burke," allegedly laughed in response. (ECF No. 1, at ¶ 18). Hoag also allegedly "sabotaged" Plaintiff's work by switching her "right

4

tags" with "wrong tags" bearing Hoag's initials. (Id. at ¶ 19). However, no other details of Hoag's alleged conduct in this regard are provided, such as the timing and frequency of such conduct, or the connection between Hoag's conduct and Plaintiff's sex and/or sexual orientation other than Plaintiff's bald assertion that Hoag "discriminated against [her]." The only additional allegation regarding this September/October 2021 incident is that Plaintiff complained about Hoag "sabotaging her work" to two supervisors and two members of Defendant's HR department but received no response. Once again, Plaintiff fails to allege any facts indicating that the lack of response had anything to do with her sex or sexual orientation.

The second alleged incident occurred in November 2023, when Hoag "shoulder-checked and hurt Plaintiff in from to several male employees," purportedly "on account of discrimination;" however, Plaintiff has alleged no facts to support her assertion that Hoag's conduct was in any way related to her sex or sexual orientation. The only additional allegation regarding this incident is that, when she reported the incident to her supervisor and commented that "she didn't understand why everyone made everything hard for her," he responded "I could tell you, but you'd need a release." (Id. at ¶ 27). Such a vague response is open to interpretation and falls well short of establishing any form of harassment or discrimination based on Plaintiff's sex and/or sexual orientation.

Aside from these isolated incidents, Plaintiff has alleged no facts whatsoever to show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult" such that she was subjected to an "abusive working environment" that detrimentally affected her work performance. Moreover, as Defendant correctly observes, "[n]othing in the Complaint … creates an inference that anything that is alleged to have happened to [Plaintiff] *was on account of her sex/sexual orientation*." (ECF No. 23, at pp. 3-4) (emphasis in original). See, e.g., Connell v.

5

Nicholson, 318 Fed. Appx. 75, 77-78 (3d Cir. 2009) (verbal and physical threats without any reference to sex or made in conjunction with sex-based remarks insufficient to support gender-based hostile work environment claim); Page v. City of Pittsburgh, 114 Fed. Appx. 52, 54 (3d Cir. 2004) (finding no hostile work environment where the "allegations of discrimination were limited to a series of isolated instances"); King v. City of Phila., 66 F. App'x 300, 305 (3d Cir.2003) (concluding that a single racial epithet followed by a physical altercation and the threat of sabotage to plaintiff's work record did not demonstrate a pervasive atmosphere of harassment); Painadath v. Lattanzio, 2023 WL 9004920, at *3 (E.D. Pa. Dec. 28, 2023) (dismissing hostile work environment claim where there were no facts alleged that the allegedly harassing conduct, including "emotional and psychological stress," physical assault, and name calling, "indicating that treatment was based on a discriminatory animus"); Kocher v. McDonough, 2023 WL 3689702, at *5 (E.D. Pa. May 26, 2023) (dismissing hostile work environment claim, finding that "[a]bsent specific examples showing that [supervisor] had discriminatory intent, [plaintiff's] allegations simply suggest that [the supervisor] was a bad boss with personal animosity towards her – and conduct motivated by a bad working relationship does not give rise to a hostile work environment claim under Title VII").

Accordingly, Defendant's motion to dismiss Plaintiff's hostile work environment claims under both Title VII and the PLRA will be granted and Counts I and IV of the complaint will be dismissed.

### B.   Constructive Discharge/Termination

Based on the identical facts alleged in support of her hostile work environment claim, Plaintiff claims that "Defendant constructively discharged Plaintiff from employment on account of her sex." (ECF No. 1, ¶¶ 36-55). This constructive discharge claim is asserted under both Title

6

VII and the PLRA (Counts II and V, respectively).

Constructive discharge occurs when an "'employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 n.4 (3d Cir. 2006), quoting Goss v. Exxon Office Sys. Co., 747 F.2d 885, 887 (3d Cir.1984). "'To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.'" Greer v. Mondelez Global, Inc., 590 Fed. Appx. 170, 175 n.7 (3d Cir. 2014), citing Spencer, 469 F.3d 316, n.4 (citation omitted). This Plaintiff has failed to do, as the Court has already determined that Plaintiff has failed to allege sufficient facts to sustain a hostile work environment claim. Accordingly, Defendant's motion to dismiss Plaintiff's constructive discharge claims will be granted and Counts II and V of the complaint will be dismissed.

**C.     Retaliation**

Once again, based on the same set of facts alleged in support of her first two claims, Plaintiff claims that "Defendant terminated/discharged [her] in retaliation for her protected conduct/activity." (ECF No. 1, at ¶ 73).

To establish a *prima facie* case of retaliation under Title VII,[3] a plaintiff must tender evidence demonstrating that: "'(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006), quoting Nelson v. Upsala Coll., 51 F.3d

---

[3] Retaliation claims are analyzed the same under Title VII and the PHRA. Connelly, 809 F.3d at 791 n.9.

383, 386 (3d Cir.1995). Defendant challenges Plaintiff's claim at each of these three elements.

With respect to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause"). Moore, 461 F.3d at 341, citing Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir. 2006). An employee engages in protected activity by complaining to his or her employer about conduct that is prohibited by Title VII. Connelly v. Lane Const. Corp., 809 F.3d 780, 792 (3d Cir. 2016).

Here, it appears that Plaintiff's alleged protected activity consisted of her complaints about Hoag "sabotaging her work," which she allegedly voiced to two supervisors and two members of Defendant's HR department. According to Plaintiff, by virtue of these complaints, she "opposed conduct that constituted discrimination and/or harassment based on sex constituting a form of protected conduct/activity." (ECF No. 1, at ¶ 72). To the contrary, however, Defendant argues that Plaintiff has failed to "plead viable facts that plausibly identify how she 'oppos[ed], or participate[d] in a proceeding' contesting activity prohibited by Title VII or the PHRA," because she has failed to allege that her complaints specified that Hoag's actions were motivated by her sex or sexual orientation. (ECF No. 20, at p. 16). The Court agrees that Plaintiff's allegations in this regard are far from clear. Nonetheless, Plaintiff does allege that Hoag's alleged sabotage of her work exemplified Hoag's "disparate treatment and discrimination" against Plaintiff, which suggests that Plaintiff's complaints regarding his conduct included references to discrimination. Thus, the Court will generously construe Plaintiff's allegations in her favor and finds that she has minimally satisfied the first prong of her *prima facie* case.

That being said, the Court finds that Plaintiff has failed to plead sufficient facts

establishing either the second or third prongs of her *prima facie* case. First, Plaintiff cannot establish that Defendant took an adverse employment action against her because, as noted above, Plaintiff has failed to adequately allege that she was constructively discharged. Plaintiff's allegations merely establish that she terminated her own employment, which is insufficient to establish an adverse employment action. See Larochelle v. Wilmac Corp., 210 F.Supp.3d 658, 705 (E.D. Pa. 2016), citing Jones v. McCormick & Schmick's Seafood Rest., Inc., 2014 WL 1669808, at *4 (D.N.J. Apr. 28, 2014) (citing Pa. State Police v. Suders, 542 U.S. 129, 141-42 (2004); Gallagher v. Sunrise Assisted Living of Haverford, 268 F.Supp.2d 436, 442 (E.D. Pa. 2003) (granting summary judgment on retaliation claim because plaintiff "fail[ed] to offer evidence of an adverse employer decision" as she "resigned and was not terminated").

Second, Plaintiff's allegations fail to establish any causal connection between her alleged protected activity and Hoag's alleged retaliatory act of "shoulder-checking" her. In particular, Plaintiff fails to allege, *inter alia*, any facts identifying: (1) when her complaints about Hoag's sabotage of her work were made; (2) Hoag's awareness of the complaints at any time prior to his alleged retaliatory act; and (3) any alleged discriminatory conduct or harassment that may have occurred during the two-year period between the first identified incident of September/October 2021 and the alleged retaliatory incident of November 10, 2023.

Based on the foregoing, the Court finds that Plaintiff has failed to plead sufficient facts to establish a *prima facie* case of retaliation, and such claim, under both Title VII (Count III) and the PHRA (Count VI), will be dismissed.

An appropriate Order follows.